IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JANET FENNERTY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 11 C 08815 |
| | ) | |
| BOARD OF EDUCATION OF THE CITY OF CHICAGO, et al., | ) ) | Judge John J. Tharp, Jr. |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

The defendants—the Chicago Board of Education, all of its members, and Jean-Claude Brizard, the CEO of Chicago Public Schools during the relevant time period[1]—move to dismiss the Amended Complaint of Janet Fennerty, a former high school teacher who alleges that she was improperly discharged in the course of a layoff of over 1300 teachers. Fennerty, who had tenure, claims that before laying her off, the Board was required to give her an opportunity to demonstrate her ability to fill any vacant positions and to prefer her over new teachers in filling any such vacancies. Her argument, however, runs headlong into controlling precedent establishing that Chicago teachers do not have a due process right to a hearing in connection with layoff terminations. Accordingly, the Court grants the defendants' motion to dismiss.

---

[1] Naming the president and individual board members in their official capacities is gratuitous. This suit is against the Board of Education; in their official capacities the members are not separate from the Board itself. "An official capacity suit is the same as a suit against the entity of which the officer is an agent." *DeGenova v. Sheriff of DuPage County*, 209 F.3d 973, 974 n.1 (7th Cir. 2000). In response to the motion to dismiss, Plaintiff states that she does not oppose the dismissal of the individual board members, though she does contest the dismissal of Defendant Brizard, formerly the CEO of Chicago Public Schools and not a member of the Board. Unless otherwise required, this opinion refers to the defendants collectively as "the Board."

1

**FACTS**

In reviewing a motion to dismiss, the Court must take the plaintiff's factual allegations as true and draw all reasonable inferences in her favor. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011). The facts are recited with this standard in mind. Fennerty was a tenured Chicago Public Schools teacher who was notified in the summer of 2010 that due to "financial exigency" she would be among 1300 teachers "honorably dismissed" by the Board of Education. For the next school year, Fennerty was placed in in the "Reassigned Teachers Pool." According to publicly available documents, the Reassigned Teachers Pool is a product of the Teachers Union's collective bargaining agreement with Chicago Public Schools and is where regularly appointed tenured teachers are placed when they are released from their assignments due to the closure, phasing-out, reconstituting, or turnaround of their school; or a drop in enrollment or change in educational focus of the school. They are paid for several months with full benefits while acting as substitutes. At the end of the reassignment period, if the teacher has not procured a new position, he or she is laid off with an "honorable termination."

Fennerty worked throughout the 2010-2011 school year, continuing her employment and tenure, although she was removed from her classroom at Roald Amundsen High School and instead acted "primarily as a long term substitute." She did not obtain another permanent teaching position during the reassignment period. On June 22, 2011, the Board of Education voted unanimously on a resolution pursuant to which Fennerty and about 150 other reassigned teachers were "honorably terminated," effective June 24, 2011. Before her termination, Fennerty was not afforded an opportunity to show that she could perform the job duties of vacant positions, other than by applying for an opening in the same manner as any other candidate without tenure. Fennerty maintains that she was qualified for positions that were open or vacant

immediately before or after her layoff, but the Board hired new probationary teachers for those positions instead.

While she taught at Roald Amundsen High School, Fennerty was a teacher representative on the Local Schools Council ("LSC"), a statutorily created body with responsibilities that include approving how school funds and resources are allocated, approving and monitoring the implementation of the annual school improvement plan, and hiring and evaluating the school's contract principal. Her principal, Carlos Munoz, did not appreciate her work on the LSC, particularly the manner in which she performed her oversight role with respect to his job. It was Munoz who identified Fennerty's job to the Board for elimination before she received her layoff notice in the summer of 2010.

Based on these allegations, Fennerty claims: (1) that the Board exceeded its authority under the School Code in dismissing her and acted in bad faith in doing so; (2) that the Board[2] denied her of her property rights in her tenured position without affording her due process before or after the dismissal (Count II); (3) that she was unlawfully discharged in retaliation for her work on the LSC, in violation of Illinois common law and the First Amendment (Counts III and IV, respectively).[3] The defendants move to dismiss the complaint in its entirety, arguing that it fails to state any claim for relief.

---

[2] "A court may not hold a government entity, such as a board of education, liable under § 1983 unless the entity adopted a policy or custom that resulted in the deprivation of the plaintiff's constitutional rights." *Bennett v. Roberts*, 295 F.3d 687, 699 (7th Cir. 2002) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). For purposes of her federal claims, Fennerty takes no particular care in pleading that a "policy or custom" of the Board itself injured her, but the nature of her due-process claim—a challenge to her discharge, which occurred pursuant to a duly passed Board resolution—implicates an official policy of the Board. *See, e.g., Benedix v. Vill. of Hanover Park*, 677 F.3d 317, 318 (7th Cir. 2012) ("[L]egislation makes the elimination of Benedix's position the Village's official policy").

[3] In her response brief, Plaintiff withdraws the First Amendment retaliation claim against the Board, so the Court does not address Count IV. To the extent that plaintiff seeks to re-plead the

**DISCUSSION**

Dismissal for failure to state a claim under Rule 12(b)(6) is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. v. Twombly*, 550 U.S. 544, 558 (2009). Here, the defendants argue that Fennerty's claims fail as a matter of law even if all of her allegations are true.

The Court begins with the due process claim, which is the sole basis for federal jurisdiction over this case now that the First Amendment claim has been withdrawn. As to Count II, the defendants profess confusion about whether Fennerty is challenging her 2010 placement in the reassignment pool or her final layoff in 2011,[4] but argue that either way, Fennerty's due-process claim is foreclosed by recent holdings that the sections of the School Code on which Fennerty relies do not confer any enforceable property rights. Fennerty's somewhat murky arguments in response boil down to her contention that, even though the Illinois courts have held that tenured teachers are not entitled to any *post*-layoff due process, the Board "must still provide her due process in accord with federal law before permanently taking her property right in her continued employment," and that the due process she is entitled to is "a pre-discharge opportunity to demonstrate that she is qualified to fill a vacant position in preference to new

---

claim and add a new defendant (Munoz), she cannot do so in the context of a response brief. *Agnew v. National Collegiate Athletic Ass'n*, 683 F.3d 328, 338 (7th Cir. 2012). She should have obtained the defendants' consent or filed a motion under Rule 15(a) and attached the proposed amended complaint. Her stated intent to amend is an inadequate substitute for compliance with the required procedures.

[4] Relying on paragraphs 27 and 31 of the First Amended Complaint, see dkt. # 21, augmented by footnote 2 of the plaintiff's response brief, *see* dkt. # 41, the Court finds it fairly plain that the due-process claim, at least, pertains to the June 2011 "honorable termination." *See* Response, Dkt. # 42, at 1-2 (The Board "took that property when—by unanimous vote on June 22, 2011—it 'honorably discharged' her from employment without allowing her the opportunity to show that she could fill any open or vacant positions.")

hires." Response, Dkt. # 42 at 3. In other words, Fennerty maintains that that she is entitled to *pre*-layoff due process.

Unless Fennerty has a property interest insulating her from a layoff, however, she has no right to a hearing, whether before or after the layoff. Without a state-created property right at stake, there can be no federal claim of deprivation without due process. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985). Under the Illinois School Code, tenured teachers have "permanent" appointments and can be terminated only for cause, which requires notice, a hearing, and other procedures. *See* 105 ILCS 5/34-84 & 34-85. Despite the "permanent" nature of their appointments, however, tenured teachers are not exempt from economic layoffs. *Land. v. Bd. of Educ.*, 781 N.E.2d 249 (Ill. 2002). The *Land* case involved challenges brought by five tenured Chicago teachers who were laid off in 1999. The teachers argued that the Board's layoff policy violated their tenure rights under sections 34-84 and 34-85 of the School Code. *See id*. at 915. They argued that their permanent tenure rights were an exception to the Board's discretion under the School Code to establish layoff and recall procedures for "employees." 105 ILCS 5/34-18(31). The Illinois Appellate Court, reversing the circuit court, held that tenured teachers were "employees" of the Board and subject to the Board's layoff procedures; because layoffs are not terminations for cause, they do not require the notice and hearing procedures that must accompany terminations. *See Land*, 757 N.E.2d at 918-920.

More importantly in the context of Fennerty's claim, the Illinois Appellate Court also rejected the teachers' argument that the layoffs violated their due process rights by depriving them of their "property rights in their tenured teaching positions." *Id.* at 924. The court held first that the plaintiffs were not entitled to any pre-layoff hearing; they had received advance notice of their layoffs, the only process required for such an action, in contrast to a termination for cause.

5

*Id.* And second, the court ruled that Chicago teachers lacked any protectable property interest conferred by "section 34-18(31) and the Board's layoff policy together." *Id.* at 924-925. Under *Powell v. Jones*, 305 N.E.2d 70, 82 (Ill. 1973), it is constitutionally permissible to afford less process to a laid-off employee than one terminated for cause; therefore, the School Code's layoff provision could not be interpreted to confer a property right. *Id.* at 925.

The limited extent of tenure protections was further clarified last year when the Illinois Supreme Court held that that the School Code does not give "laid-off tenured teachers either a substantive right to be rehired after an economic layoff or a right to certain procedures during the rehire process." *Chicago Teachers Union Local No. 1, American Federation of Teachers*, 963 N.E.2d 918, 927 (Ill. 2012) ("*CTU*"). This holding came in answer to certified questions from the Seventh Circuit in a case that arose from the teacher layoffs in the summer of 2010—the same round of layoffs that initially affected Fennerty. *See Chicago Teachers Union Local No. 1, American Federation of Teachers*, 662 F.3d 761 (7th Cir. 2011). The plaintiff teachers had alleged that their due process rights were violated when they were laid off without being considered for or rehired into vacant positions and without being preferred over new hires for such positions. *Id.* at 763; *CTU*, 963 N.E.2d at 925, 926. Their claims were vitiated by the Illinois Supreme Court's decision to the contrary, because without a state-created property right at stake, there can be no federal due process claim. *See CTU*, 963 N.E. 2d at 923; *Chicago Teachers Union Local No. 1, American Federation of Teachers*, 476 Fed. App. 83, 84 (7th Cir. Apr. 19, 2012).

In effect, the Illinois Supreme Court's ruling in *CTU* established that once a teacher's employment has been terminated as the result of an economic layoff, his or her tenured status confers no protectable property interest that requires procedural protections such as recall rights

or a right of preference over other candidates for rehire. That is why, after *CTU*, Fennerty amended her complaint to assert a right to a *pre*-layoff hearing instead of *post*-layoff remedies such as rehire. *See* Response, Dkt. # 42, at 2-3 (acknowledging the import of *CTU's* holding for her claim of entitlement to a post-layoff hearing). Similar due-process claims by other Chicago teachers discharged in 2010 were recently rejected in *Price v. Bd. of Educ.*, 2013 WL 1914325 (N.D. Ill. May 8, 2013). The court concluded that *Land* and *CTU* foreclosed the argument that the tenure statute provides a property right that entitles tenured teachers to a pre-layoff hearing, explaining that rationale of those cases is "just as applicable in in the pre-layoff context as it does in the post-layoff context." *Id*. at *7. Fennerty also insists that *CTU* is inapplicable to the pre-discharge context, but this Court, like the *Price* court, cannot ascertain why that would be the case, and Fennerty provides no rationale for drawing such a distinction.

In addition, established due-process principles undermine Fennerty's argument. Post-deprivation remedies are a lesser form of due process and are sufficient only in exceptional cases, such as when pre-deprivation procedures are impossible. *See generally Gilbert v. Homar*, 520 U.S. 924, 930 (1997) ("This Court has recognized, on many occasions, that where a State must act quickly, or where it would be impractical to provide predeprivation process, postdeprivation process satisfies the requirements of the Due Process Clause."); *Zinermon v. Burch*, 494 U.S. 113, 128, 132-33 (1990) ("[a]lthough a State usually must provide a hearing before it deprives a person of property, it does not have to do so where providing a predeprivation hearing is impossible"); *Hudson v. Palmer*, 468 U.S. 517, 533-34 (1984). If state law does not create a property right that would require even post-deprivation remedies—as *CTU* held it does not for laid-off tenured teachers—then plaintiff is hard-pressed to establish that she has a property right entitling her to pre-hearing process.

7

Perhaps in contrast to the claims asserted in *Price*, however, at some points Fennerty appears to allege that her "layoff" was a sham, in that she believes there was no real "financial exigency." *See, e.g.,* Am. Cmplt. ¶¶ 10-12. She also plainly alleges that she was included in the layoff "in retaliation for her actions as an LSC member and for the content of her speech on issues of public concern." *Id.* ¶¶ 14, 35-45, 62. But her due process claim—in contrast to her state law claims—cannot reasonably be read to turn on allegations that her "layoff" was pretextual. For starters, she is not consistent in her allegations; she sometimes employs and sometime disputes the term "layoff" as a descriptor for what occurred. For example, although her complaint alleges that the Board "did not lay Fennerty off as provided in Section 34-18(31) of the School Code," Am. Compl. ¶ 60, she goes on to allege that the Board violated the law by denying her "a meaningful opportunity to show that she could perform the job duties of open or vacant positions at the time of her *layoff*," *id.* ¶ 66 (emphasis added). And tellingly, that claim is fundamentally inconsistent with the remedy that Fennerty seeks. If Fennerty truly meant to base her due-process claim on an allegation that the purported layoff, as applied to her, was a pretext for retaliation, then the "process" she would have asked for would be an opportunity to contest the *bona fides* of her layoff—not what she actually seeks, which is a pre-discharge opportunity to demonstrate her ability to fill vacant positions with preference over new hires—that is, relief from an allegedly unlawful layoff.

More importantly, Fennerty's due-process claim targets the Board and Mr. Brizard[5]—the defendants responsible for implementing the discharge—and not Principal Munoz, the individual

---

[5] Mr. Brizard, is named in his official capacity; which is to say, as a representative of Chicago Public Schools. But there are no factual allegations pertaining to CPS anywhere in the Amended Complaint. Therefore, although Fennerty declined to voluntarily dismiss her claims as to Brizard along with the individual Board members, she fails to state any claim for relief against Brizard in any capacity, and therefore her claims are dismissed as to Brizard.

who allegedly selected her for downsizing out of an improper retaliatory motive. There is not a single allegation in the complaint that the Board was motivated by animus or had any intent to retaliate (and Fennerty could not plausibly allege that the Board laid off some 1300 teachers as part of a pretext to dismiss her). Indeed, there are no allegations that Board (or any of its individual members) had any knowledge the activities Fennerty engaged in that, she says, inspired retaliatory animus in Munoz.

Moreover, the bare assertion that the Board "ratified and is otherwise responsible for the actions of Muñoz," Am. Compl.¶ 46, does not suffice to state a federal due-process claim against the Board. It is essentially a claim that the Board is ultimately responsible for the illegal actions of its employee—in other words, it is a *respondeat superior* theory. It is axiomatic, however, that there can be no *respondeat superior* liability under § 1983. *See Gschwind v. Heiden,* 692 F.3d 844, 847 (7th Cir. 2012) (school district cannot be liable for tortious conduct of the school principal under doctrine of *respondeat superior*). Under the *Monell* doctrine*, see Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978) the Board itself can liable only for constitutional injuries "caused or ratified by a person with final policymaking authority" or resulting from "an express municipal policy" or "a widespread practice constituting custom or usage." *Simmons v. Chicago Bd. of Educ.*, 289 F.3d 488, 494 (7th Cir. 2002). There are no factual allegations in the complaint that plausibly suggest that the alleged retaliation was a product of any of these. The allegations pertaining to retaliation implicate only the individual conduct of Munoz, and Fennerty's conclusory statement, unsupported by any facts, that the Board "ratified" Munoz's improper conduct is insufficient to plausibly suggest that Munoz effectively enjoyed final policymaking authority. *See Darchak v. City of Chicago Bd. of Educ.*, 580 F.3d 622, 629-630 (7th Cir. 2009) (explaining that Illinois law "assigns responsibility for

personnel decisions to the Board, not to individual school principals," and even delegation of final authority over hiring and firing does not amount to delegation of authority to set *policy* for hiring and firing).

Thus, although Fennerty's state-law claims, Counts I and III, are based upon the allegedly improper reason for which she was selected for inclusion on the layoff list, the suggestion that her layoff resulted from Munoz's retaliation does not insulate her due process claim *against the Board* from the applicable Illinois precedents such as *CTU*. Like the plaintiffs in *Price*, Fennerty's claim is simply that, having been selected for a layoff, she had a property right derived from the tenure statute, 105 ILCS 5/34-84, to a pre-discharge opportunity to demonstrate that she could fill a vacant position in preference to a new hire. *See* Am. Compl. ¶¶ 26-34, 68-73; Response, Dkt. # 42 at 1-4

None of this is to suggest that Fennerty would have stated a due process claim had she actually requested a pre-layoff hearing on the issue of whether the layoff was pretextual. In *Shegog v. Board of Education of City of Chicago*, 194 F.3d 836 (7th Cir. 1999), a group of teachers did argue that the Board was required to hold pre-layoff hearings at which teachers could challenge the reasons given for their layoffs. *See id.* at 838. There, eight former Chicago teachers "contend[ed] that they were let go in violation of statutes establishing tenure" when they were laid off pursuant to the Board's reduction in force policy promulgated pursuant to 105 ILCS 5/34-85(31). *Id.* at 837. The Seventh Circuit's opinion is primarily notable for its potent reminder that the jurisdiction of the federal courts to interpret the Illinois School Code is highly circumscribed, because they are not permitted to enforce the *substantive* guarantees of state laws and regulations. *See id.* at 837-38. The Court noted that in *Shegog*, the parties' primary argument was not over whether state law provided a property right, but over the meaning of the underlying

10

state law that conferred the property right, meaning "the complaint does not 'arise under' federal law." *See id*. at 838. Where the dispute is about whether state officials have conformed their conduct to the requirements of state law (as is Fennerty's claim of pretextual layoff), there is not a federal question. *Id.* ("people who contend that a state actor has violated state law . . . must present their claims to state court").

The *Shegog* court ultimately determined that only one aspect of the case came within federal jurisdiction: "whether 105 ILCS 5/34-18(31) or the Board's regulations create property interests within the meaning of the due process clause." *Id*. at 838-39. The Seventh Circuit did not answer whether such a right existed that would have entitled to the plaintiffs to a pre-layoff hearing; instead it remanded the case to district court instead to decide the issue and relinquished jurisdiction over any remaining claims to be decided by state judges. *Id*. at 840. On remand, the district court granted a motion to dismiss the federal claim, holding that section 34-18(31) confers no property rights and imposes no procedural requirements on the Board. *Shegog v. Bd. of Educ. of City of Chicago*, 2000 WL 555504 (N.D. Ill. 2000).

Fennerty disputes the defendants' argument that her claim of a right to pre-layoff due process is foreclosed by *Shegog*, *Land,* or *CTU*. First, she says that the *Shegog* plaintiffs were just too greedy in arguing that they were completely immune from layoffs, whereas she only wants a hearing in which to argue she is qualified and able to fill another vacant position. This position is untenable; the *Shegog* plaintiffs' federal claim was premised on a procedural right to a hearing, which is the only reason the Seventh Circuit concluded that there was any federal jurisdiction. *See Shegog*, 194 F.3d at 838. Second, Fennerty argues that *Shegog* is distinguishable because the property interest she seeks to protect derives exclusively from section 34-84 of the School Code—the tenure provision. *See* Response, Dkt. # 42 at 5. That is true enough; the

11

particular statutory provision examined in *Shegog* was section 5/34-84(13), in combination with Board regulations; however, the Seventh Circuit specifically characterized the plaintiffs' position as a challenge to being laid "in violation of *statutes establishing tenure*." *Shegog*, 194 F.3d at 837 (emphasis added). Like Fennerty, the *Shegog* plaintiffs believed that the tenure statute exempted them from the statute authorizing the Board to make rules for layoffs.

In any case, in arguing that her protected property interest derives solely from section 5/34-84, the tenure provision, Fennerty hits a dead-end in *Land*, which was decided after *Shegog* and which specifically held that tenured teachers do not have property rights in continued employment that protect them from layoffs. Fennerty says otherwise, grasping the thinnest reed of a question unanswered in *Land*: whether there is a procedural right to a "pre-termination opportunity to demonstrate her ability to fill a vacant position." Response, Dkt # 42 at 4. The distinction is illusory. *Land* held that the plaintiffs were not entitled to a pre-layoff notice and hearing because "layoffs are not governed by sections 34-84 and 34-85 of the Code and the hearing procedures contained therein." 757 N.E.2d at 924. In other words, in a layoff, unlike in a termination, tenure provisions are irrelevant and confer *no* procedural rights. *CTU* confirmed that point. *See* 963 N.E.2d 918, 927; *see also* Price, 2013 WL 1914325, at *7 ("Section 34–84 simply says nothing about a tenured teacher's substantive rights *vis-a-vis* an economic layoff"). And as explained above, Fennerty's conclusory argument that these cases do not apply to her situation because she wants pre-discharge, not post-discharge, process, is inadequate—why due process would afford a hearing before, but not after, a layoff goes unexplained. To say, moreover, that laid-off tenured teachers must be given a hearing at which to demonstrate their ability to fill vacant spots is not appreciably different from giving them a right not to be laid off or a

guaranteed right of re-hire into another position, both of which the Illinois courts have said are not required by the School Code.

In a further effort to circumvent the precedents that work against her, Fennerty also says that her due-process claim is based on "the theory" articulated in *Mims v. Board of Education*, 523 F.2d 711 (7th Cir. 1975). In *Mims*, several female civil servants who worked for the Board of Education challenged their layoffs on due-process grounds (in addition to arguing sex discrimination), after six of their male compatriots were moved into temporary positions. The Seventh Circuit first concluded that the district court erroneously ruled that the plaintiffs lacked a protectable property interest; "we think that plaintiffs had a property interest in their continued active employment, not just in their status as civil servants." *Id*. at 715. The court never identified the source of that property right, but from the context it is fair to infer, as the defendants do, that the civil service code had something to do with it. In the portion of the opinion relied upon by Fennerty, the *Mims* court went on to say that the laid-off women should have been given an opportunity to demonstrate their ability to perform the temporary work into which the laid-off men were reassigned, which was an appreciably different type of physical labor from the jobs they had vacated. The Board was not entitled to assume without further inquiry that the male employees were best suited for the temp jobs; "[t]he issue of whether plaintiff could perform the work, unlike that of the need to cut back due to loss of federal funding, was one of which plaintiff might have been able to contribute information and valid persuasion" at a hearing. *Id*. at 715.

Thus, the motivation for allowing a pre-termination hearing in *Mims* was predicated on the particular type of temporary position offered, which differed from the positions that the plaintiffs had vacated. Fennerty, by contrast, argues for the opportunity to (re)demonstrate her

fitness to teach before a layoff becomes final; a hearing in that circumstance seems unnecessary, at best. In any event, *Mims* did not create a new way to forge a due-process claim. Although the *Mims* court did not articulate the source of the plaintiffs' property right, it still required that they have one. And it is axiomatic that state law must confer the property rights that federal due process principles protect. Thus, Fennerty is not relieved of the threshold requirement of establishing her property interest. She identifies the source as the tenure provisions of the School Code, but Illinois case law says otherwise. *Mims*, therefore, is of little relevance and no help to Fennerty.

Without a state-created property interest in continued employment, Fennerty is not entitled to due process before she can be deprived of her job by way of a layoff. *See Loudermill*, 470 U.S. at 538. The due-process claim must therefore be dismissed. And because the dismissal is based on principles of law that foreclose the claim for a pre-layoff hearing, further re-pleading would be futile. Therefore, the dismissal is with prejudice. As to the other federal claim, even the plaintiff concedes that she failed to plead a colorable First Amendment retaliation claim.[6] Although she suggested an intent to amend her complaint to add a new defendant—Munoz, whose identity and involvement was known to her from the moment of her initial reassignment in 2010—she did not. No federal claims remain.

The Court declines to exercise its supplemental jurisdiction over the state-law claims. *See* 28 U.S.C. § 1367(c)(3); *Sharp Electronics Corp. v. Metropolitan Life Ins. Co.*, 578 F.3d 505,

---

[6] Fennerty acknowledges her failure to sue the appropriate defendants, but skips over her failure to set forth any facts that plausible suggest either a "discharge" (as opposed to a layoff) or "retaliation" within the meaning of Illinois law. *See Chicago Commons Ass'n v. Hancock*, 346 Ill. App. 3d 326, 328-39 (Ill. App. Ct. 2004)("Illinois courts have allowed retaliatory discharge actions in two settings: (1) when an employee is discharged for filing, or in anticipation of the filing of, a claim under the Workers' Compensation Act (820 ILCS 305/1 et seq. (West 2002)); and (2) when an employee is discharged in retaliation for reporting illegal or improper conduct by the employer, otherwise known as 'whistle-blowing.'").

514-515 (7th Cir. 2009). Particularly inappropriate for resolution in federal court is Count I, which simply asks the Court to decide whether the Board exceeded its statutory authority—in other words, to interpret the Illinois School Code. The Seventh Circuit in *Shegog* could not have been more clear that such questions of state law should be decided by state judges. 194 F.3d at 840. The retaliatory discharge claim is also creature of state law, and the defendant's argument for dismissal is premised solely on the contours of that tort under Illinois common law; that claim, too, is best left to state court.

*  *  *

The motion to dismiss is granted with prejudice as to the due-process claim, and the Court declines to exercise its supplemental jurisdiction over the remaining claims, which are dismissed without prejudice.

Entered: June 10, 2013

_____
John J. Tharp, Jr.
United States District Judge